HAUPT LUMBER CO. *vs.* JOHN WESTMAN *et al.*

Submitted on briefs April 20, 1892. Decided May 3, 1892.

**Mortgage—When Prior to Mechanic's Lien.**—*Held*, in an action to foreclose a mechanic's lien, that W., the vendor of the land on which the improvements were made, holding a mortgage for the amount of the purchase price, is a "*bona fide* prior mortgagee," within the meaning of the language found in Laws 1889, ch. 200, § 5, having, as such, precedence over the lien claims of certain mechanics and material men.

**Mortgage—When Subject to Mechanic's Lien.**—As to other lien claimants who performed work and furnished materials for the vendee, but while said W. was, in fact and of record, the owner of the land, it is *held* that the mortgage is secondary and inferior.

Appeal by Nellie M. Weide, one of the defendants, from a judgment of the District Court of Ramsey County, *Cornish*, J., entered November 7, 1891.

The plaintiff, the Haupt Lumber Company, on March 18, 1890, and between that day and May 1, 1890, sold and delivered to defendant John Westman lumber of the value of $419.57, which he used in performing his contract to build a two-story frame dwelling house for defendant George G. Berg, on a lot in Stinson's Division to St. Paul. He commenced to do work and obtain material on March 18, 1890. This Lumber Company in due time made and filed a statement for a lien under Laws 1889, ch. 200, and brought this action to foreclose it. Nellie M. Weide and her husband, Joseph R. Weide, were made defendants. She owned the lot, and with her husband conveyed it to Berg. The deed was dated January 6, 1890; its execution was acknowledged on February 12, 1890, and it was recorded March 17, 1890. The defendant Berg gave back to her a mortgage for $1,720.70, part of the purchase price. It was dated January 6, 1890, and was acknowledged and recorded on March 17, 1890. All other claimants were also made parties defendant. The plaintiff in its complaint charged that Berg agreed with Mrs. Weide that he would build the house to enhance her security, and that it was so

built at her instance, and with her consent, and that she was not, as against plaintiff, a *bona fide* prior mortgagee. These charges were denied by Mrs. Weide, and she prayed that her mortgage be adjudged a prior lien to that of plaintiff, and to any and all other liens and claims of the defendants or any of them. Eleven other answers were filed by lienholders, all claiming priority over the mortgage.

The action was brought to trial in June, 1891. The court found that on January 6, 1890, an agreement in writing was entered into between the husband, Joseph R. Weide, on his own behalf, and the defendant Berg, whereby the husband undertook to sell this lot to Berg for $1,700 and taxes, and that nothing should be paid down, but that Berg should build a house on the lot; and, when the foundation was completed, a deed should be delivered to him, and he should give back his note and a mortgage on the lot for the entire purchase price, with interest due in six months. The wife knew of this agreement, and that Jacobson was putting in the foundation, and did not object. This writing was lost, and its provisions were shown by oral evidence, as the witnesses recollected them. Berg, on February 15, 1890, contracted with defendant Jacobson to build the foundation, and with defendant Westman for the superstructure. When the foundation was completed, Mrs. Weide made the deed, and took back the mortgage in fulfillment of this contract of her husband.

The trial court held that all the liens, including that of plaintiff, were without priority among themselves, but were all superior to the mortgage to Mrs. Weide. It ordered the property sold, and the liens paid, the surplus, if any, to be paid upon the mortgage. In a note appended to the findings the learned trial judge stated he was not satisfied that the determination arrived at would work out equal and exact justice, but it would approach that condition as nearly as the statute would permit; that the Weides showed an honorable disposition to stand by the contract with Berg, and claimed nothing on the ground of legal incapacity resulting from their marital relations; that the course taken by Mr. Weide in the original transaction could fairly be attributed to misapprehension of the effect and operation of the lien law then recently enacted.

*Williams & Schoonmaker,* for appellant.

The liens should be divided into two classes: *First,* those attaching prior to March 17, 1890, the date of delivery and recording of the deed and mortgage; *second,* those attaching after that date. *Nolander* v. *Burns,* 48 Minn. 13.

The findings and memorandum of the court negative any suspicion of fraud in the sale of the lot and delivery and acceptance of the mortgage. After the conveyance the defendant Mrs. Weide had no further interest in the property; her mortgage gave her a mere lien for the purchase money of the lot; there was no understanding whereby the building was to be erected for her benefit, nor any agreement whereby the property was to be reconveyed to her. She gave public notice of her mortgage by placing it at once on record where all persons interested could see it. No one claims to have been deceived, misled, or injured by any act or omission on her part. It was an honest and fair business transaction. It is both prior in time and *bona fide,* and cannot be postponed to the subsequent liens.

When Mrs. Weide took her mortgage she had no notice of the second class of these lien claims, for neither the liens nor any facts from which they might arise were then in existence, not even potentially or inchoatively. This second class of lien claimants had not then furnished one cent's worth of labor or materials to Westman, nor had they contracted so to do. That Mrs. Weide's mortgage is prior to the liens attaching after it was recorded is fully determined in this court. *Hill* v. *Aldrich,* 48 Minn. 73; *Oliver* v. *Davy,* 34 Minn. 292; Jones, Mortg. §§ 466, 609; Phil. Mech. Liens, § 232.

*Arthur P. Lothrop,* for respondents.

The attempted contract of January 6, 1890, between Berg and Joseph R. Weide was invalid, nonenforceable, and void as a contract for the sale and conveyance of the land in question, because Mrs. Weide did not join in its execution, and because a husband cannot execute such a contract, as the agent for his wife, nor was he authorized by her in writing to sell her real estate.

The Berg contract, although void as a contract to sell and convey, was evidence that the house was built at the instance and request,

and with the knowledge and consent, of Nellie M. Weide and her agent, Joseph R. Weide. *Althen* v. *Tarbox*, 48 Minn. 18.

By giving her husband authority to cause houses to be built upon her land, she authorized him to incur obligations in her name, and to bind her to pay for the improvements and incidentally to subject her land to mechanics' liens to secure such indebtedness. *Tuttle* v. *Howe*, 14 Minn. 145, (Gil. 113;) *Althen* v. *Tarbox, supra.*

By authorizing Berg to build the house, Mrs. Weide authorized him to make contracts with, and incur obligations to, workmen and material men. Westman and Jacobson stood in the position of subcontractors under him to whom Berg delegated the performance of parts of his work. These subcontractors in turn contracted with the other lien claimants for their work and material. They furnished their work and material to enable Westman and Jacobson to fulfill their contracts with Berg, and to enable Berg to carry out his contract with Mrs. Weide. As early as January 6, 1890, Mrs. Weide set this in motion, whereby the laborers and material men were induced to put their labor and material into the building.

By causing Berg to build a house. and to contract for labor and materials for it, Mrs. Weide subjected her interest in the property to equities in favor of the men who were thus induced to supply materials and labor therefor. The mortgage which she took after the house was begun is subject to the same infirmities and affected with the same equities as her original title. In other words, she is a mortgagee with notice of these equities and infirmities, and is not a "*bona fide* prior mortgagee," within the meaning of the statute. *Hill* v. *Gill*, 40 Minn. 441.

COLLINS, J. Plaintiff corporation brought this action to enforce its lien claim for materials furnished and used in the erection of a dwelling house on a city lot. The facts were not in controversy. On January 6, 1890, Mrs. Weide, a defendant, was the owner of the lot in question. She was engaged in quite an extensive business; among other things, that of buying and selling real estate and erecting houses thereon. Her husband, J. R. Weide, also a defendant, was her general agent, managing and conducting all her business.

About the day last mentioned he entered into a written agreement with one Berg, by the terms of which, in his own behalf, he undertook to sell to Berg the lot for the sum of $1,725, on time. The latter was to build a house on the premises, and when the foundation thereof was completed a deed of the lot was to be delivered to him, and he was to execute and deliver a note for the full amount of the agreed purchase price, payable six months from date, and also a mortgage upon the deeded premises, securing the same. Berg then entered into a contract with defendant Jacobson for the construction of a foundation for the house, and with defendant Westman for the superstructure thereof. The foundation was substantially completed, and examined by J. R. Weide, on or before March 17th. On that day he delivered to Berg a warranty deed for the lot, dated January 6th, duly executed and acknowledged by Mrs. Weide and himself on February 12th, and at the same time received from Berg the note and mortgage agreed upon, each bearing date January 6th. The deed and mortgage were duly recorded on the day of their delivery, March 17th. Defendant Jacobson and defendant Bergstrom, who was a subcontractor under Jacobson, claim liens for labor performed and materials furnished on the foundation, commencing February 15th. Westman, the contractor for the construction of the superstructure, filed no claim for a lien, and the claims of the remaining parties—plaintiff, and defendant respondents, who were subcontractors under Westman—are for labor performed and materials furnished subsequent to the delivery and record of the deed and mortgage. We have, then, two distinct classes of lien claimants, —one being Jacobson and Bergstrom, whose claims relate back to February 15th; the other being plaintiff corporation and other subcontractors, who performed no labor and furnished no material until after the deed and mortgage were placed on record. They then performed labor and furnished materials for a contractor who, although he had previously entered into an agreement to erect the superstructure, had not commenced to perform his contract when the premises were deeded to Berg, and by him mortgaged to Mrs. Weide. Or, to put it in another shape, one class of lien claimants acquired their rights while Mrs. Weide was the owner of the lot; the other class,

subsequently to the recording of her deed and the vendee's mortgage, —the same transaction.

Mr. Weide was not the owner of the lot when he executed and delivered the agreement to convey. Nor did he pretend to act for his wife, who was the real owner; but, if he had, the writing would not have been valid as her contract to sell and convey, for Mr. Weide had no written authority to make it. As there was no valid executory contract entered into for the sale of real property, the provisions of Laws 1889, ch. 200, § 4, of the lien law have no application here. See *Althen* v. *Tarbox*, 48 Minn. 18, (50 N. W. Rep. 1018.) But by the terms of this writing it was shown that Mr. Weide knew that Berg intended to put the foundation for a dwelling house upon the lot, while Mrs. Weide remained the owner of the same in fact and of record. It was also fully established on the trial that Mr. Weide had knowledge of the improvements being made by Jacobson and Bergstrom as the same progressed, and was fully advised of the exact situation when he delivered the deed and received the mortgage on the 17th of March. There was no finding that Mrs. Weide had personal knowledge of the writing signed by her husband, or that work was being done on real property belonging to her, but the knowledge possessed by her agent must be ascribed and attributed to her. As before stated, she was engaged in buying and selling real estate and in erecting houses thereon, and Mr. Weide transacted all of her business. His complete knowledge of the facts was hers in law. The foundation was substantially completed March 17th, the day she changed her relationship from that of an owner of the lot in fact and of record to that of a mortgagee; and it must be said, at least, that the case, to this extent, comes within the provisions of Laws 1889, ch. 200, § 5. The labor and materials of Jacobson and Bergstrom were performed and furnished at the instance of Mrs. Weide, the owner of the lot when so performed and furnished, and the amount of their lien claims have precedence over the lien of the mortgage.

But there is a clear distinction between lien claims for work done and materials placed on the premises in question prior and those subsequently to March 17th. Before that day Mrs. Weide

was the owner of the lot. She had knowledge, through her agent, of what was being done upon the same, and failed to object. Remaining silent, although informed of the situation, the *status* of certain lien claims in respect to her interest in the land became fixed and established through a statutory rule of evidence found in § 5. At that time, before Westman, contractor for the superstructure, had commenced in any manner, Mrs. Weide deeded, and at once became a mortgagee, both deed and mortgage being spread upon the records. That her claim as a mortgagee is prior, in point of time, to the lien claims of the persons who were subcontractors under Westman, is obvious; so that, if she is a *bona fide* mortgagee, she stands fully and expressly protected by language found in § 5, part of which has been used herein to her disadvantage. On this there is not the slightest question, as is apparent from the findings of fact as well as from the note appended thereto by the learned trial judge. There is nothing before us indicating bad faith on the part of Mrs. Weide or her husband which would justify the conclusion that the mortgage was a mere device, through which to secure the erection of a house at the expense of the mechanics and material men. She became a mortgagee in name, and this fact was disclosed of record before the second class of liens attached; and we are clearly of the opinion that she was a *"bona fide* prior mortgagee,"* whose claim must have precedence, under the statute, over all respondents except Jacobson and Bergstrom. The case is not unlike that of *Hill* v. *Aldrich,* 48 Minn. 73, (50 N. W. 1020.) It is altogether different in essential features from that of *John Martin Lumber Co.* v. *Howard, post,* p. 404.

In conclusion we take occasion to say that possibly a different view might be taken as to the priorities of these several claims had the contractor Westman commenced work on the superstructure before March 17th.

Remanded, with instructions to modify the judgment in accordance with the views above expressed.

(Opinion published 52 N. W. Rep. 33.)