WINNIFRED GAGNON AND ANOTHER v. O. E. BARNES.[1]

May 4, 1923.

No. 23,385.

**Amendment of complaint at trial proper.**

1. There was no abuse of discretion in permitting an amendment to the complaint at the trial.

**Agent authorized by telegraph to execute contract.**

2. In this action for specific performance of a contract for the conveyance of land, executed by an agent whose authority rested on a telegram from defendant, the agent is *held* to have had authority to execute the contract at the time it was executed.

**Contract definite enough to decree conveyance.**

3. The contract was sufficiently definite to decree a conveyance of the property in question.

**Application to trial court to protect defendant.**

4. If defendant should have further protection than given by the decree ordered, application may be made to the trial court.

[1]Reported in 193 N. W. 685.

Action in the district court for Hennepin county for specific performance of a land contract. The case was tried before Waite, J., who, when plaintiff rested, denied defendant's motion to dismiss the action, made findings and ordered judgment in favor of plaintiffs. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Canfield & Michael*, for appellant.

*Loren Risk* and *M. C. Tifft*, for respondents.

HOLT, J.

The appeal is from an order denying defendant's motion for a new trial.

The defendant in July 22, 1920, was the owner of a farm near Luverne encumbered by mortgages to the extent of $35,000, and one A. E. Godfrey controlled the disposition of a house and lot in Bryn Mawr Addition to Minneapolis, known as No. 32 Ash street, subject to a $5,500 mortgage, and also owned 674 acres of land in South Dakota under a contract for deed. On that day a contract was made between this defendant and one A. M. Taylor, as parties of the first part, and A. E. Godfrey, as party of the second part, whereby the parties of the first part agreed to convey the farm to the party of the second part, subject to the mortgages mentioned, and the party of the second part in return was to convey 32 Ash street, Minneapolis, subject to $5,500 encumbrances, and transfer the contract to the South Dakota land, subject to the payment of $84,000 still to be made thereon. The title to the Minneapolis property was then of record in the plaintiffs herein, the daughter and son-in-law of Godfrey. In the fall the contract was carried into effect, at least so far as the Luverne farm and the Minneapolis house and lot were concerned, by the execution and delivery of deeds as provided, except that at Godfrey's request the grantee's name in the deed to the farm was left blank. It was never recorded. It does not appear what disposition was made of the South Dakota land contract, but the inference is that Taylor was interested in the deal, and that may have gone to him. In February, 1921, defendant let 32 Ash street

to Godfrey at $125 per month, and Godfrey let the farm to defendant for an agreed rental. Soon thereafter the parties met with difficulties. Defendant and Taylor had agreed to pay for a renewal of the mortgages on the farm, and renewals could not be had. Negotiations then began looking towards rescinding the deal insofar as consummated, and under date of April 23, 1921, Taylor wrote Barnes asking, in effect, authority to so do with Godfrey. Three days later authority as requested came by telegram. On June 23, 1921, Godfrey, as party of the first part, and Taylor, as party of the second part, made such a contract which both signed, Taylor appending to his signature the words, "Agt. for O. E. Barnes." Thereafter Godfrey, on delivering to Taylor certain instruments mentioned, obtained this document dated September 16, 1921:

"Received of A. E. Godfrey quit-claim deed signed by A. E. Godfrey and Lydia D. Godfrey (his wife) to O. E. Barnes to the east one half (E½) of section one (1) township one hundred two (102) range forty-five (45) Rock county, state of Minnesota. Also bill of sale of live stock and machinery, purchased by A. E. Godfrey from O. E. Barnes, and also dismissal of a certain suit instituted by Thos. W. Gagnon and Winnifred Gagnon against O. E. Barnes.

"In return for which, A. M. Taylor, as agent for O. E. Barnes, agrees to deliver to A. E. Godfrey a warranty deed to a certain piece of property, located at 32 Ash street, Bryn Mawr, Minneapolis, Minnesota. Said deed to be executed by O. E. Barnes and wife to Thos. W. Gagnon and Winnifred Gagnon (his wife). Said deed to be delivered on or before October 1, 1921.

A. M. Taylor.<br>Agt. for O. E. Barnes."

In explanation of the bill of sale and the dismissal of suit, referred to in the above, the record discloses that some time after the original deal was made, Barnes held an auction at the farm, clerked by a bank at Luverne, at which Godfrey bid in some stock and personal property which was settled for by a promissory note and a chattel mortgage on the property running to the bank. And in placing the parties as near as might be in their original position,

Godfrey by the bill of sale relinquished the interest he had obtained, thus avoiding the necessity of a foreclosure. The dismissal was of a suit upon the same cause of action as the present, filed in Hennepin county in March, 1921, summons in which was served on defendant on April 28, 1921. There had been a change of venue to Rock county and the action was there pending when the above instrument was received by Godfrey.

The action is for specific performance of the contract above set out. During the trial plaintiffs were permitted, over defendant's objection, to amend the complaint so as to ask reformation of the contract, in that, through inadvertence, a provision had been omitted that the conveyance of 32 Ash street should be made subject to the encumbrances existing thereon when the same property was conveyed to defendant. Findings were made to the effect that Taylor had authority from defendant to make the contract for a reconveyance of No. 32 Ash street to plaintiffs; that Godfrey and plaintiffs had carried out their part of the agreement; that the error referred to therein came through inadvertence; and permitted reformation and directed defendant to convey the premises No. 32 Ash street, Minneapolis, to plaintiffs.

The amendment of pleadings is within the discretion of court, and defendant has no just cause to claim prejudice or abuse of judicial power in the action of the court.

The chief attack is directed against the finding that Taylor had authority to make the agreement above set out at the time it was made. It cannot well be denied that the telegram of April 26, in answer to Taylor's letter of April 23 to defendant, gave Taylor full authority to place the parties as to the farm and the Minneapolis premises in exactly the same position they occupied just prior to executing the contract of July 20, 1920. The clear inference from Thomas v. Rogers, 108 Minn. 132, 121 N. W. 630, 133 Am. St. 421, is that a telegram from the principal to the agent to act complies with the statute of frauds, section 7003, G. S. 1913, requiring the authority to be in writing. But the claim is, the authority was expressly revoked before September 16, 1921, and, even if not so re-

voked, lapse of time destroyed or withdrew its power before acted on. The evidence does not require or even warrant a finding that the authority given Taylor was ever expressly withdrawn or impliedly terminated by intervening negotiations. Nor, in view of the situation of the parties, as disclosed by their testimony and correspondence, can it be said that the learned trial court went astray in concluding that the mere lapse of time had not worked a revocation. We do not understand the intermediate negotiations between the parties to have been in conflict with the authority granted.

Marquam v. Ray, 65 Ore. 41, 131 Pac. 523, is cited to the proposition that an unreasonable time passed before the final consummation of the deal authorized, but in that case there was given a formal power of attorney to mortgage or to sell a certain lot to raise money for a specific purpose. Nine years after mortgaging the lot under the power, the agent sold it. There is no similarity between the two cases. Nor do we think the situation here is at all like the one present in La Plant v. Loveland, 142 Minn. 89, 170 N. W. 920, where the surrounding circumstances called for immediate action of the agent.

The next proposition is that if Taylor had authority to negotiate an agreement to undo the trade of July 20, 1920, he nevertheless was without power to bind defendant by written contract, and that the contract he purported to make was not defendant's. Taylor appears to have had more than an agent's commission in the deal. The inference is that he and defendant had a common interest therein. The contract for the original exchange of the properties was executed by both defendant and Taylor as parties of the first part. They had also jointly agreed to pay for the renewal or extension of the mortgage on the farm. Under these circumstances it should not be difficult to connect defendant with the contract of June 23, as well as with that of September 16 by virtue of his telegram of April 26 in response to Taylor's letter of April 23. This would indicate not only authority to negotiate, but power to execute the agreement sued on. The finding to that effect must therefore be sustained.

There is little of substance to the contention that the contract is indefinite. So far as concerns plaintiffs or Godfrey the terms of the contract were completed when delivered, and the only thing required of defendant was the conveyance of the premises 32 Ash street, Minneapolis, to plaintiffs. The past relations of the parties to this property were such that there could be no difficulty in definitely designating or locating 32 Ash street, Minneapolis, on the ground.

Defendant moved for a new trial, but did not ask for amendment of the findings or any modification of the conclusions of law. On the oral argument the thought was forcefully stressed that defendant is not adequately protected by obtaining merely a quitclaim deed from Godfrey and wife. The contract does not call for more. In view of the fact that the deed from defendant and wife was delivered in blank as to grantee, and no grantee had ever been inserted, or the deed recorded, the parties evidently concluded that a quitclaim back to the grantor from the Godfreys placed the title to the farm in fact in defendant exactly in the condition it was before the original deal. If this is not enough protection for defendant, application may still be made to the trial court for proper relief.

The order appealed from is affirmed.